CLARA HILL AND THE COUNTY PARK COMMISSION OF CAMDEN COUNTY, PLAINTIFFS-RESPONDENTS, v. BOROUGH OF COLLINGSWOOD AND WILLIAM H. BECK, CHIEF OF POLICE OF THE BOROUGH OF COLLINGSWOOD, DEFENDANTS-APPELLANTS, AND A. MOULTON McNUTT, JUDGE OF THE MUNICIPAL COURT OF THE BOROUGH OF COLLINGSWOOD, DEFENDANT.

Argued March 3, 1952—Decided May 12, 1952.

*Mr. Sidney P. McCord, Jr.,* argued the cause for appellants (*Mr. R. Cooper Brown,* of counsel; *Messrs. Brown and Field,* attorneys).

*Mr. Frank C. Propert* argued the cause for respondent Clara Hill.

*Mr. Henry M. Evans* argued the cause for respondent County Park Commission of Camden County.

The opinion of the court was delivered by

HEHER, J. The Camden County Park Commission leased to the individual respondent a clubhouse and tennis courts on park lands within its jurisdiction for a term of five years, running from May 29, 1951, for the tennis courts and from August 31, 1951, for the clubhouse; and the essential question is whether the contract is *ultra vires* and void.

The leased property borders on Newton Lake in Collingswood, New Jersey. The lessee undertook to operate an "all-year-round milk bar" in the clubhouse, known as the Newton Lake Tennis Building, and to provide during the demised term tennis, boating and bicycling facilities for public hire, and to pay rent at the rate of $75 per month for the clubhouse and 10.5 per cent of the gross receipts from the operation of the tennis, boating and bicycling concession. The lessee guaranteed a "rental return from the building," during the term, "of $4500 regardless of the success" of the venture. There was competitive bidding for the concession, and it seems to be conceded that the lessee's was the highest bid. The park commission's purpose was to afford to the public "further recreational opportunities along the waters of Newton Lake." The leased building is a one-story stone structure containing showers, lockers, a small recreation room, a utility room, and rest rooms. The lessee was given possession of the tennis courts on May 29, 1951, and of the clubhouse on August 31, 1951. On September 1 she was arraigned in the Municipal Court of Collingswood on a complaint charging the operation, maintenance and use of the building for business on that day in violation of the local zoning ordinance restricting the area to residential uses, so it is said. On the next succeeding day the lessee was again arraigned in that

tribunal on a complaint alleging the same offense on that day; and a third complaint was made averring that on the same day she did sell ice cream in contravention of a local ordinance forbidding the sale of merchandise on Sunday. The lessee was later convicted on all three complaints and was fined $200 and costs for each of the pleaded offenses.

In this civil action at law in lieu of *certiorari* the Superior Court reversed the convictions of the plaintiff lessee in the municipal court, adjudged "invalid and without legal jurisdiction and unenforceable as against" both the corporate and individual plaintiffs the cited zoning regulation and the ordinance forbidding merchandising on Sunday, and restrained further interference with them in the performance of the contract of lease.

■ The basic contention is that the plaintiff park commission is not empowered "to use or permit others to use, under lease, its lands and buildings for other than park purposes," and so the contract of lease under review is a nullity. We find it to be without substance.

The commission is a body politic and corporate created by *R. S.* 40:37–195 *et seq.* The essence of the argument is that the corporate body has only the powers enumerated in the statute, and the park lands may not be "used or leased to a third party for any purpose beyond the normal scope of 'park purposes' as defined by *R. S.* 40:37–238." This section provides that, with certain exceptions not here pertinent, all real estate acquired under the act "for the purpose of public parks shall be forever kept open and maintained as such." Yet what was done here does not constitute a variance from the statutory use. These are but facilities for the enjoyment of the dedicated use, and wholly in keeping with its character. It would seem that reasonable usage of the lands for tennis and the provision of food and beverages are within the normal recreational province of a park, and therefore comprehended in the statutory delegation of general managerial power. Indeed, the clubhouse provides personal conveniences indispensable to the full enjoyment of the park.

The course thus taken is plainly in furtherance of, rather than a deviation from, the essential park use, and so within the directorial discretion.

But the authority exercised here is not left to implication as an essential component of the express grant. *Chapter* 360 of the *Laws of* 1939 (*N. J. S. A.* 40:37–201.1) empowers the commission to "provide and operate, or arrange for the operation of, such facilities for the use and enjoyment of its parks by the public as it may deem to be necessary and expedient"; also, to "provide, at its discretion, by a proper rule or regulation, for the terms upon which and the manner in which all of such facilities may be used," though nothing therein contained "shall be deemed to authorize the commission to issue or consent to licenses, privileges or franchises to individuals or corporations for the operation for private profit of any facility, utility or devise (*sic*) within the park, except upon terms which will provide for limiting the operation of such license, privilege or franchise to a period not exceeding twenty years in any event." The award of the "franchise" is required to be made to the highest bidder "in open competition," after advertisement as therein specified; and the "license or privilege" shall be subject to revocation "for cause." "All proceeds derived from the operation of such facilities or from any of the operations" of the commission are directed to be used by the commission "for the development and management of its parks, any general or special law to the contrary notwithstanding."

The principle restraining diversion from the essence of a specific dedicated public use, as in *Baird v. Board of Recreation Commissioners of South Orange,* 108 *N. J. Eq.* 91 (*Ch.* 1931), has no pertinency here. There was no breach of the statutory jurisdiction. It is axiomatic that, barring constitutional restraints, the Legislature may in this wise condition the use of parks of its own creation.

But these park lands are within the corporate limits of the Borough of Collingswood; and the insistence is that the dedicated park use is subject to the exercise of the police

power delegated to the State's municipalities under *R. S.* 40:48–1 and *R. S.* 40:48–2, and also *R. S.* 40:55–30 *et seq*, for use zoning. This point, too, is untenable.

We are not concerned here with a park founded and maintained by the defendant borough itself or by one of its governmental agencies. The particular park is an integral part of a county park system established under a commission appointed by the local board of freeholders pursuant to *R. S.* 40:37–195 *et seq*. Thereby the commission is constituted a body politic "with power to sue and be sued, use a common seal and make by-laws." *R. S.* 40:37–198. It is empowered to establish and· maintain public parks and open spaces for public resort and recreation, to acquire lands for such purposes in its corporate name, and to "make·rules for the use and government" of such parks and places. *Section* 204. The lands of the park system may· extend into an adjoining county: and "all ordinances, rules and regulations duly established" by the commission "and applicable to the park shall be effective to the same extent in all portions of the park regardless of the county line," and the jurisdiction of its police officers is extended accordingly. *R. S.* 40:37–17, 40:37–18. In addition to the specific powers adverted to, the commission is authorized to make, alter, amend and repeal "rules and regulations for the protection, regulation and control of the parks and parkways and the roads, driveways, sidewalks, paths, lakes, pools, ponds, fountains, trees, flowers, shrubs, statuary, buildings, tools, implements and other things contained therein, and prescribe and fix the amount of fines and penalties for the violation of such rules and regulations," and to bring proceedings for the enforcement of such fines and penalties. *R. S.* 40:37–201, 40:37–240. The commission is also permitted to appoint and establish "a constabulary to preserve order in the parks and parkways under its control, and to secure.the enforcement of the rules and regulations passed and enacted by it," and to "organize the constabulary into a police system to be known as 'the park police of the county of ................' " *R. S.* 40:37–202.

The members and officers of the park police "may arrest on view and without warrant, and conduct before" a magistrate, any person found violating the rules and regulations enacted by the commission "for the protection, preservation, regulation and control of the parks and parkways, and all property and other things therein, and in addition shall have all the powers conferred by law on police officers or constables in the enforcement of the laws of this state and the apprehension of violators thereof." *R. S.* 40:37–203. The power of condemnation is also given. *R. S.* 40:37–207. Its lands are held for "the benefit of the county." *R. S.* 40:37–208. Operating expenses are defrayed by the board of freeholders on requisition of the park commission. *R. S.* 40:37–233, 40:37–234. Capital expenditures may be met by the proceeds of bonds or any obligations of the county. *R. S.* 40:37–235.

Thus, the Legislature has provided for the establishment of county park systems and governance under autonomous bodies in terms that clearly exclude the divisive control claimed by the municipality here. By explicit provision, the police power delegated to the municipality for use zoning and the regulation of merchandising may not be exerted within the area of special jurisdiction assigned to the park authority. The statutes are *in pari materia* and on well-settled principles of construction are to be given full force and effect, each in its own sphere of action. The theory of dual control advanced by the defendant municipality is at variance with the evident sense of the legislative expression. It is an unrealistic conception of the legislative scheme—such as would militate against the fulfillment of the basic statutory policy. This is the *ratio decidendi* of *Astley v. Newark*, 98 *N. J. L.* 251 (*Sup. Ct.* 1922).

The character of the public service charged to the park authority by the law makes clear the essential quality and content of the special regulatory jurisdiction. Public parks are intimately related to the general social well-being. The term "park" signifies lands used by a public authority "for ornament" and public "recreation and amusement."

*Williams v. Gallatin,* 229 *N. Y.* 248, 128 *N. E.* 121, 18 *A. L. R.* 1238 (*Ct. App.* 1920). Public parks are designed "for public recreation, and zoning cannot increase or diminish the extent of this use. * * * Zoning cannot modify the recreational uses of a public park. * * * Public parks are areas devoted by law to recreation exclusively. This being the case, they should not be zoned for use." *Bassett on Zoning,* 69, 215. It was there pointed out that open-air business enterprises are allowable in public parks located in residential districts, obviously because of the overriding nature of the use and the things needed for its full benefit and enjoyment. So, too, in the case of the sale of food and beverages on the Christian Sabbath, the jurisdiction of the park authority is exclusive. The power to establish and maintain parks is legislative, and the delegated governmental function is assessed by the terms of the grant, reasonably construed to serve the central legislative design. *Bishing v. Asbury Park,* 80 *N. J. L.* 416 (*E. & A.* 1910).

It is also urged that the subject lease or license transgresses *R. S.* 2 :207–1, forbidding worldly employment or business on the Christian Sabbath. But this provision was amended by *N. J. S.* 2A :171–1 and 2A :171–2, permitting the sale of "meals, prepared food and nonalcoholic beverages on Sunday." The franchise was not rendered void by reason of the state of the law in this behalf at the time it was given : the grant was conditioned upon compliance with the existing statutory law regulating worldly transactions on the Sabbath.

It is said also that a "reference" to the minutes of the park authority "discloses an absolute disregard for the statutory procedure" in the making of the lease; that an "examination" of the lease "discloses that it is not in conformity with the resolution awarding the contract, the public advertisement, nor the specifications"; and that "the lease will expire at different times, and only the plaintiff could possibly carry on the business with any continuity." This relates to the stated difference in the term expirations, May 29, 1956, and August 31, 1956.

■ Although we perceive no substance to the point as thus narrowly outlined on the brief and the oral argument, the question is not raised by the pleadings. There is no such specification either in the answer or in the counterclaim. We find only the general allegation that the lease "is not made in accordance with the statute." And the stipulation of facts recites that the lease was awarded to the individual plaintiff in accordance with a bid submitted "after advertisement under the provisions of *R. S.* 40 :37–201.1," but that defendants "do not admit the legal sufficiency of the contract." Thus the particular point was not raised by the pleadings or the stipulation of facts offered in lieu of testimonial proof. It cannot be raised here for the first time.

■ Now, as to the remedy: Under the Constitution of 1844, ordinances of municipal corporations were removable into the Supreme Court and there reviewable at the instance of an aggrieved party. This remedial function was deemed within the general supervisory jurisdiction of the old Supreme Court, exercising the power of the King's Bench. *City of Camden v. Mulford,* 26 *N. J. L.* 49 (*Sup. Ct.* 1856); *State, Gregory, Taylor, Pros. v. Jersey City,* 34 *N. J. L.* 390 (*Sup. Ct.* 1871); *State v. Court of Common Pleas,* 1 *N. J.* 14 (1948). That jurisdiction is now exercisable by the Superior Court under *Article VI, section V, paragraph 4* of the *Constitution of* 1947 and *Rule* 3 :81, regulating proceedings in lieu of prerogative writs. *Fischer v. Township of Bedminster,* 5 *N. J.* 534 (1950). But here the subject ordinances are not invalid. The proceeding is for relief against erroneous applications of the ordinances in violation of the statutory jurisdiction of the park authority, and it is sustainable under equitable principles to avert a threatened injury irreparable by the processes at law. *Vide Brunetto v. Town of Montclair,* 87 *N. J. Eq.* 338 (*E. & A.* 1917); *Howard Co. Jewelers v. New Jersey State Board of Optometrists,* 133 *N. J. Eq.* 4 (*Ch.* 1943); also 87 *A. L. R.* 1247; 101 *A. L. R.* 693. Since no question was raised as to the propriety of the remedy invoked and the issues were fully litigated and the rights of

the parties adjudged and effectuated, we shall not disturb the judgment on this account. Under *Article VI, section III,* *paragraph* 4 of the *Constitution of* 1947, the Law Division and the Chancery Division of the Superior Court, subject to rules of the Supreme Court, are each authorized to exercise the powers and functions of the other "when the ends of justice so require"; and it is directed that "legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."

But the validity of the convictions was not within the cognizance of the Law Division of the Superior Court. These are penal and *quasi*-criminal proceedings governed by *Rule* 8:1, prescribing the practice and procedure in the local criminal courts, whose jurisdiction (*subdivision* 3) includes violations of local ordinances. *Rule* 8:11–1 directs that appeals from "judgments of conviction" be taken in accordance with the rules governing criminal practice. *Rule* 2:11(*a*) ordains that the "only method" of reviewing a judgment of conviction in an inferior court of limited criminal jurisdiction, other than a criminal district court, shall be by appeal taken to the County Court, unless the judge of the inferior court is also the county judge, in which case the appeal shall be taken to the Law Division of the Superior Court. And *Rule* 2:11(*i*) provides for an appeal of right from a judgment of conviction in the County Court or the Superior Court in cases of this class to the Appellate Division of the Superior Court; while *Rule* 4:5 has reference to the discretion of the Appellate Division to review causes directly from the local criminal courts where the interests of justice dictate that course. *State v. Yaccarino,* 3 *N. J.* 291 (1949). The stipulation of facts declares that appeals from the judgments of conviction here were taken to the Camden County Court and there remain "pending and undisposed of." But the convictions are manifestly erroneous and, pursuant to *Article VI, Section V, paragraph* 1 of the *Constitution of* 1947 and

*Rule* 1:2–1, the appeals pending in the County Court are certified here and the judgments of conviction reversed.

The judgment of the Law Division of the Superior Court is accordingly modified and, as so modified, affirmed; and the judgments of conviction entered in the municipal court are reversed.

WACHENFELD, J., concurring in result.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.