PARKING AUTHORITY OF THE CITY OF TRENTON, A BODY CORPORATE AND POLITIC, PLAINTIFF-CROSS-APPELLANT AND RESPONDENT, v. CITY OF TRENTON, A MUNICIPAL CORPORATION, AND THOMAS B. BARLOW, BUILDING INSPECTOR OF THE CITY OF TRENTON, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued February 19, 1963—Decided June 3, 1963.

252

*Mr. John J. Connell* argued the cause for plaintiff-cross-appellant and respondent.

*Mr. Robert R. Ross* argued the cause for the defendants-appellants and cross-respondents.

The opinion of the court was delivered by

PROCTOR, J.   The plaintiff Parking Authority of the City of Trenton (Authority) was created by ordinance of the defendant City of Trenton (City) on December 16, 1948, pursuant to the Parking Authority Law (*L.* 1948, *c.* 198, *N. J. S. A.* 40:11A–1 *et seq.*).   On December 26, 1961 the Authority was required by the defendant Barlow, Building Inspector of the City, to pay a fee in the amount of $1,831 for a building permit under the City's building code in connection with the proposed erection of a ramp garage by the Authority on premises owned by it and situated in the City.   The building code was adopted by the City pursuant to the grant of police power contained in *N. J. S. A.* 40:48–1(13), which provides in part that a municipality may make and enforce ordinances to "regulate and control the construction  *  *  *  of buildings and structures of every kind within the municipality; * * *." The Authority paid the fee under protest and brought this action in May 1962, contending that the Legislature, by providing for the Authority's creation as an autonomous body, intended to immunize it from the requirements of the City's building code.   It sought a judgment declaring whether the permit requirement of the building code applies to it, and, if not, then directing the repayment of the aforesaid fee.

The complaint contained a second count setting forth that Mayor-Council Plan C of the Optional Municipal Charter Law (*L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 *et seq.* (Faulkner Act)) would become effective in the City on July 1, 1962. It further set forth that on August 7, 1961, the City entered into an agreement with the Authority which provided that the City would make up any deficit in the Authority's debt service from the City's on-street parking meter revenues, that the City would do nothing to interfere with the operation of the Authority's facilities, and that such agreement would inure to the benefit of the Authority's bondholders. At the time of the action there were outstanding bonds in the amount of $2,000,000. The Authority sought a judgment declaring whether the Authority was an office which would be abolished, and whether the terms of office of the five incumbent commissioners would be terminated, by operation of *N. J. S. A.* 40:69A–207 of the Faulkner Act upon the effective date of the new plan of government, and whether, in any event, the City was estopped by virtue of the above agreement from abolishing the Authority or from interrupting the terms of the incumbent commissioners. The defendants' answer admitted all allegations of fact contained in the complaint.

On the Authority's motion for summary judgment, the trial court held that the City was empowered to exact a fee for its building permit and that the Authority was not entitled to reimbursement. Therefore, the Authority's motion for summary judgment on the first count was denied, and upon the consent of the parties to treat such disposition as final, a judgment in favor of the defendants was entered. As to the second count, the trial court held that neither the Authority nor the terms of office of its incumbent commissioners were affected by *N. J. S. A.* 40:69A–207 of the Faulkner Act. The court therefore granted the Authority's motion for summary judgment on this count.

The defendants appealed from the judgment entered on the second count, and the Authority cross-appealed from the judg-

ment entered on the first count. We certified the appeals before they were heard in the Appellate Division.

In *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne,* 40 *N. J.* 227 (1963), we held that upon the effective date of a new plan of government under the Faulkner Act in a municipality, the terms of office of commissioners of a parking authority created by the municipality under the Parking Authority Law, *supra,* come to an end by operation of *N. J. S. A.* 40:69A–207, but that the offices constituting the authority are not abolished. That disposition is controlling in the present case. Therefore, as to the defendants' appeal from the judgment entered on the second count of the complaint, we hold that the trial court's judgment must be modified to reflect the termination of the terms of office of the incumbent commissioners upon the taking effect of the new plan of government in the City. We find nothing in the City's agreement with the Authority inconsistent with this conclusion.

On the Authority's appeal, it contends that it is immune from the City's building permit requirement because (1) the Authority, as a political subdivision of the State and as an agency and instrumentality of the City, is exempt from such requirement; and (2) the fee for the building permit constitutes a tax from which the Authority is exempt under *N. J. S. A.* 40:11A–19.

It is without question that the Authority is a political subdivision of the State, *N. J. S. A.* 40:11A–4, and an independent corporate entity, distinct and separate from the municipality creating it. *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne, supra,* at *p.* 233 of 40 *N. J.*

The Authority contends that because of its above status it is not required to obtain a building permit for the construction of its garage. It cites *New Jersey Interstate Bridge & Tun. Comm. v. Jersey City,* 93 *N. J. Eq.* 550 (*Ch.* 1922); *Town of Bloomfield v. New Jersey Highway Authority,* 18 *N. J.* 237 (1955); *Aviation Services v. Board of Adjustment*

*of Hanover Tp.,* 20 *N. J.* 275 (1956) ; *Hill v. Borough of Collingswood,* 9 *N. J.* 369 (1952) ; and *Kaveny v. Montclair Board of Com'rs,* 71 *N. J. Super.* 244 (*App. Div.* 1962). We think these cases do not support the Authority's position. In both *New Jersey Interstate Bridge & Tun. Comm.* and *Town of Bloomfield,* the question presented was the applicability of municipal building and zoning ordinances to state instrumentalities which were engaged in the extension of the state highway system. Such entities, as agencies of the State, were held in both cases to be protected from such local regulations by the State's sovereign immunity, which had not been surrendered in the legislation creating such entities. The rationale of these cases was that local resistance should not be allowed to impede the State's means of expanding its highway system to meet modern conditions. See *Town of Bloomfield,* 18 *N. J.,* at *p.* 248. There is no analogy between the above state instrumentalities and a municipal parking authority, which is created by the municipality itself to perform a purely local function. See *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne, supra,* at *p.* 235 of 40 *N. J.*

In the remaining cases cited by the Authority, it was found that the enabling legislation, by express provision or by necessary implication, insulated the entities there involved from building and zoning regulations of the municipalities in which the entities conducted the challenged activities. See *Aviation,* 20 *N. J.,* at *p.* 283; *Hill,* 9 *N. J.,* at *p.* 375; and *Kaveny,* 71 *N. J. Super.,* at *p.* 246. The Authority concedes there is no express provision in the Parking Authority Law exempting the Authority from the requirements of the City's building code, and we find no implication in the law that such exemption should exist. The Legislature has provided for the complete exemption of boards of education from the requirement of securing a municipal building permit for school construction, *N. J. S. A.* 18:11–11, and for the exemption of certain counties from the requirement of paying a fee for a municipal building permit in connection with the construction of county buildings. *N. J. S. A.* 40:23–6.20. As mentioned above, no

such specific exemptions are to be found in the Parking Authority Law. That law does contain a provision that municipal ordinances regulating the parking of vehicles shall not apply to an authority's parking project unless the authority gives its consent. *N. J. S. A.* 40:11A–18. If the Legislature had also intended to exempt an authority from municipal building regulations or from the payment of a fee for a building permit, a similar provision to that effect could readily have been included in the law. The absence of such a provision leads us to conclude that the Legislature intended no such exemption to exist. *N. J. S. A.* 40:11A–23(4), cited by the Authority, which provides that an authority shall not be subject to "the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes," is not to the contrary. As was pointed out in *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne, supra,* at *p.* 239 of 40 *N. J.,* that section was intended only to free authorities from certain restrictions in *Title* 40 which are imposed upon municipalities generally. That section was certainly not intended to limit a municipality's police power *vis a vis* an authority.

The Authority also contends that, as "an agency and instrumentality of the municipality," *N. J. S. A.* 40:11A–4, it should not be burdened with the expense of paying for a building permit. It argues that since the City chose to discharge its governmental responsibility of relieving traffic congestion through the agency of the Authority, it should not be permitted to impose a fee for a building permit on the Authority "where there would have been no occasion for the expense of a building permit if it [City] had chosen to perform its governmental responsibility itself."

We find this contention to be without merit. If the City had constructed the ramp garage on its own, as it was empowered to do, *N. J. S. A.* 40:60–25.1, there still would have been the expense of examining the building plans, supervising the construction, and inspecting the finished project, so as to insure compliance with the building code standards.

Such expense would have had to be borne by the taxpayers as a cost incident to the construction project. One of the primary reasons for the creation of a municipal parking authority is to permit the taxpayers to be relieved of the financial burden connected with the construction and operation of public parking facilities, and to have the authority bear all of the costs involved in order that they might be liquidated from the revenues received by the authority for the use of its facilities. See *DeLorenzo v. City of Hackensack,* 9 *N. J.* 379, 387 (1952). No one suggests that the amount of the required fee is not reasonably related to the cost incurred by the City in securing compliance with its building code. *Cf. Daniels v. Point Pleasant,* 23 *N. J.* 357, 361 (1957). Therefore, even though the Authority is an "agency and instrumentality" of the City, we see no reason arising out of that relationship which would preclude the City from charging the fee in question.

The Authority finally contends that the tax exemption section of the Parking Authority Law, *N. J. S. A.* 40:11A–19, precludes the City from imposing a building permit fee upon it. Under that section, all property of a parking authority is declared to be public property devoted to an essential public and governmental function, and "shall be exempt from all taxes and special assessments of the State or any subdivision thereof." (The Authority does not contend that the fee in question constitutes a "special assessment.") The section further provides that "in lieu of taxes by political subdivisions upon the property of a parking authority, the authority which owns or holds such property may agree to make payments to a political subdivision for the services, improvements or facilities furnished by it for the benefit of a parking project." The Authority argues that the legislative intention as expressed in the above section was not merely to relieve the Authority of the imposition of real and personal property taxes, but also of "all other imposts, as appears from the fact that the Authority is authorized to agree to make payments to the City in lieu of taxes for 'the services, improvements or facilities

furnished' by the City for the benefit of the parking project."
From this it concludes the Legislature contemplated that the
Authority "might at its option * * * make payments to
the City of sums in lieu of the normal fee exacted for said
'services'," but that "the Authority would not be obligated to
pay therefor."

■■ The Authority concedes that "the primary purpose
of the City ordinance requiring the payment of a fee for a
building permit is regulatory under the police power, rather
than a revenue producing measure," and it does not contend
that the amount of the fee is not reasonably related to the cost
of securing compliance with the building code. This court
has said that a building permit fee, which is primarily de-
signed to defray the cost of regulation in the exercise of
municipal police power, is not to be considered a tax for pur-
poses of judging its validity as a municipal measure, as long
as the amount of the fee bears a reasonable relation to the
cost incurred by the municipality in connection with such
regulation. *Daniels v. Point Pleasant, supra,* 23 *N. J.,* at *p.*
361; see *Bellington v. East Windsor Tp.,* 17 *N. J.* 558, 565
(1955). Such a distinction between a fee charged in the exer-
cise of the police power and a tax imposed for general revenue
purposes has long been recognized in other jurisdictions as
well. See 9 *McQuillin, Municipal Corporations,* § 26.201;
16 *id.* § 44.02 (*3d ed.* 1950) (citing cases); 4 *Cooley, Taxa-
tion,* §§ 1787, 1802 (*4th ed.* 1924) (citing cases). Surely,
the Legislature was aware of this well-settled distinction when
it limited the parking authority's exemption to "taxes and
special assessments." The provision in the statute for pay-
ments by the Authority to the City of sums "in lieu of taxes"
for "the services, improvements or facilities furnished" by
the City does not evince an intent to expand the ordinary
meaning of "taxes" as used in the first clause of the statute.
Rather, the provision for payments "in lieu of taxes" is merely
to allow the Authority and the City to arrive at an equitable
arrangement whereby the City may be reimbursed for the fur-
nishing of those "services, improvements or facilities" which

would ordinarily be paid for out of general tax revenues, and which the Authority, because of its tax-exempt status, would otherwise receive without recompense to the City. Recently, we held that a charge for sewer services is not a tax within the meaning of *N. J. S. A.* 55:14A–20 of the Local Housing Authorities Law, a tax exemption provision which is substantially the same as that contained in the Parking Authority Law, *N. J. S. A.* 40:11A–19. *Jersey City Sewerage Authority v. Housing Authority of City of Jersey City,* 40 *N. J.* 145 (1963). In principle, we see no difference between the payment of a reasonable fee for a building permit and the payment of sewer charges, with respect to the tax-exempt status of an authority.

Therefore, we conclude the trial court properly held that the City was empowered to require payment of the fee in question, and that the Authority was not entitled to reimbursement.

The judgment of the trial court is modified to declare that the terms of the incumbent commissioners of the Authority terminate upon the taking effect of the new plan of government in the City. In all other respects, the judgment is affirmed.

WEINTRAUB, C. J., and HANEMAN, J. (dissenting in part). We join in the opinion of Mr. Justice Proctor except insofar as it holds that the terms of the commissioners of the Parking Authority came to an end upon the adoption of the new form of government under the Faulkner Act. We would hold that the terms were not affected, for the reasons set forth in our dissent in *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne,* 40 *N. J.* 227 (1963).

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.