257 N.J. Super. 241 (1992)
608 A.2d 397
NEW LIFE GOSPEL CHURCH, APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF HOUSING BUREAU OF FIRE SAFETY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1991.
Decided June 11, 1992.
*244 Before Judges KING, GRUCCIO and BROCHIN.
Susan S. Rankin argued the cause for appellant.
John J. Chernoski, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney, Joseph L. Yannotti, Deputy Attorney General, of counsel, John J. Chernoski, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
New Life Gospel Church (the Church), a non-profit religious organization, appeals from a decision of the New Jersey Department of Community Affairs, Division of Housing, Bureau of Fire Safety (the Department) which required the Church to pay a life hazard use registration fee pursuant to the Uniform Fire Safety Act (the Act), N.J.S.A. 52:27D-192 to -213.
*245 The Church owns and operates the New Life Christian School, which is classified as a life hazard use[1] and is the subject of the registration fee. The Church filed a life hazard registration application for the school,[2] which it described as two buildings; a two-story constructed before 1900, and a one-story constructed in 1983. The use was described as a day care center and a grade school.
The Department issued the Church a life hazard use certificate of registration for its school, classifying it a life hazard use AE04.[3] The Church was assessed a $115 annual registration fee to be paid within 30 days.
The Church requested a hearing challenging the registration fee as an unlawful tax against a religious organization, and claimed an exemption. The Department denied the hearing request as untimely.[4]
The Church claims that the registration fee is revenue raising and therefore a tax, which it, as a religious organization, is not required to pay. A tax is imposed by the government *246 for general revenue purposes. Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 582, 583 A.2d 277 (1990). If the primary purpose of a fee is to raise revenue, it is a tax. Id. (citing Daniels v. Borough of Point Pleasant, 23 N.J. 357, 129 A.2d 265 (1957)). The Supreme Court has noted that, in contrast to a tax, a fee is imposed under the government's police power to regulate. Holmdel Builders Ass'n v. Township of Holmdel, supra, 121 N.J. at 582-83, 583 A.2d 277; Parking Auth. of the City of Trenton v. City of Trenton, 40 N.J. 251, 259, 191 A.2d 289 (1963). A fee is not judged a tax so long as the amount of the fee bears a reasonable relationship to the cost incurred by the government to regulate. United States v. Sperry Corp., et al., 493 U.S. 52, 60-61, 110 S.Ct. 387, 393-94, 107 L.Ed.2d 290, 301-02 (1989); Parking Auth. of the City of Trenton v. City of Trenton, supra, 40 N.J. at 259, 191 A.2d 289. If a fee's primary purpose is to reimburse the municipality for services reasonably related to development, it is a permissible regulatory exaction. Daniels v. Borough of Point Pleasant, supra, 23 N.J. at 361, 129 A.2d 265.
We find the life hazard use registration fee a permissible regulatory exaction. The Act clearly states that the purpose of the registration fee is to recover the cost of enforcing the Act. Here, the Church has not sustained its burden of showing that the minimal registration fee imposed does not bear a reasonable relation to the annual cost of inspecting the two buildings comprising the New Life Christian School. Therefore, it is reasonably imposed.
The Church further contends that its religious nature constitutionally mandates exemption from the fee. Our Constitution states that property of religious organizations may be exempted from taxation. N.J.Const. art. VIII, § 1, para. 2. The Legislature has exempted property of religious organizations which is used exclusively for religious or charitable purposes from taxation. N.J.S.A. 54:4-3.6. However, entities exempted from taxes are not exempted from paying government *247 fees. Parking Auth. of City of Trenton v. City of Trenton, supra, 40 N.J. at 257, 191 A.2d 289 (tax exempt municipal parking authority not exempt from payment of building permit fees); Jersey City Sewerage Auth. v. Housing Auth. of the City of Jersey City, 70 N.J. Super. 576, 176 A.2d 44 (Law Div. 1961), aff'd, 40 N.J. 145, 190 A.2d 870 (1963) (tax exempt housing authority not exempt from sewerage treatment fees).
Where the Legislature has intended to exempt an entity from payment of a fee imposed pursuant to a regulatory scheme, it has done so in clear and unequivocal terms. See, e.g., N.J.S.A. 52:27D-126c (prohibiting the payment of construction code fees for the erection or alteration of public building owned by a county, municipality, or any agency or instrumentality thereof). The provisions of N.J.S.A. 54:4-3.6, which provide tax exemption for certain property of religious organizations, do not also provide religious organizations an exemption from regulatory fees.
Although the Church's school may be religious in character, it is not constitutionally exempt from the fee. The fee is not a tax and the Legislature did not intend to exempt similar schools from the registration fees. Accordingly, the Church is not exempt.
The Church next contends that the power of an administrative agency to define life hazard use and, by virtue of that definition, to tax property, is an improper delegation of authority. This argument is premised upon the misconception that the registration is a tax. Since the fee is not a tax, the Legislature properly delegated the authority to the Department. The Legislature may properly confer upon an administrative agency the power to provide regulations to promote the spirit of the legislation. Cammarata v. Essex Cty. Park Comm'n, 46 N.J. Super. 262, 269, 134 A.2d 604 (App.Div. 1957), aff'd, 26 N.J. 404, 140 A.2d 397 (1958). Further, the Legislature may delegate *248 to an administrative agency the authority to implement broad legislative policy. Id. at 410, 140 A.2d 397.
Administrative regulations are presumed valid and the party attacking the regulations has the burden of showing their invalidity. Bergen Pines Cty. Hosp. v. New Jersey Dept. of Human Services, 96 N.J. 456, 477, 476 A.2d 784 (1984); Public Serv. Elec. & Gas Co. v. New Jersey. Dept. of Envtl. Protection, 193 N.J. Super. 676, 684, 475 A.2d 665 (App.Div. 1984), aff'd, 101 N.J. 95, 501 A.2d 125 (1985). The purpose of delegating the authority to promulgate regulations is to utilize the agencies' staff, resources, and expertise for understanding and solving specialized problems.
There is no evidence that the Legislature improperly delegated authority to the Department. Further, the grant of this authority is to be liberally construed to enable administrative agencies to accomplish the legislative purpose. In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 516, 524 A.2d 386 (1987). The court will not substitute its judgment for the expertise of an agency. Dougherty v. Department of Human Servs., Div. of Medical Assistance and Health Servs., 91 N.J. 1, 6, 449 A.2d 1235 (1982).
We recently stated, in In re Adoption of N.J.A.C. 7:26B, 250 N.J. Super. 189, 593 A.2d 1193 (App.Div.), certif. granted, 126 N.J. 385, 599 A.2d 162 (1991), that review of an agency action questions whether the action violates the enabling act's express or implied legislative policies; whether there is a substantial basis in the record to support findings upon which the agency based application of legislative policies; and whether in applying legislative policies to facts, the agency clearly erred by reaching a conclusion that could not have been reasonably made upon a showing of relevant factors. Id. at 207, 593 A.2d 1193. We have reviewed the Department's system for imposing the fees and find no violation of the Act.
The Department classified the Church's buildings as a life hazard use, to be inspected annually, and imposed a minimal *249 registration fee of $115. While the Church claims that the facts demonstrate improper Department action, a reading of the record indicates otherwise. The Department was confronted with the State's first recent budget crisis which resulted in a 15% increase in registration fees. The Department also adopted regulations classifying schools as life hazard uses and imposed registration fees for these uses.
Previously, schools were not classified as life hazard uses. However, the Department limited the registration fee to $115 for public or private K-12 educational buildings registered as life hazard uses, even if the building had other life hazard uses which would normally result in a higher fee. Thus, the Church was one of the direct beneficiaries of the Department's intent to limit fees for educational facilities. Further, this type of life hazard use does not require any permit to conduct other activities in the buildings, which is required of other life hazard uses.
The Department has properly implemented the legislative mandate and determined an appropriate level of fees. The Department reduced the level of fees for life hazard uses, such as the Church's, which are educational facilities for New Jersey's students. Further, the inclusion of certain educational facilities as life hazard uses affords occupants the protection of the Act by ensuring that the use is registered and annually inspected for compliance with the Fire Code. Therefore, there is nothing to indicate that the Legislature or the Department acted improperly.
The Church next contends that the title of the Act failed to state that one of its purposes was to generate revenue or to tax certain properties. It claims that this violates the New Jersey constitutional requirement that the purpose of every law be expressed in the Act's title. N.J. Const. art. IV, § 7, para. 4. The purpose of this constitutional requirement is to prevent the use of deceptive or misleading titles. The Howard Savings Inst. v. Kielb, 38 N.J. 186, 200, 183 A.2d 401 (1962). If the title gives notice as to the kind of legislation *250 under consideration and its general subject matter, there is no constitutional violation. Ibid.
The Act sets forth that it is "[a]n Act establishing a uniform, minimum fire safety code." L. 1983, c. 383. The classification of objects subject to the fire safety code, the creation of a registration and inspection system, and the mechanism for the establishment of fees to defray the cost of the regulatory scheme, are rightly included within the uniform fire safety code. See, e.g., N.J.S.A. 52:27D-119 (State Uniform Construction Code Act); N.J.S.A. 55:13A-1 (Hotel and Multiple Dwelling Law). Accordingly, the title of the Act comports with the constitutional requirements.
The Church next contends that the application of the fee results in excessive entanglement of church and state, in violation of the Lemon[5] test. On that basis, the Church requests an exemption from the fee.
Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), established guidelines for determining whether state action satisfactorily avoids violation of the Establishment Clause of the First Amendment to the United States Constitution. The Lemon test requires consideration of three factors: (1) does the enacted statute have a secular legislative purpose; (2) does the statute's principal or primary effect neither advance nor inhibit religion; and (3) does the statute avoid excessive governmental entanglement with religion. Id. at 612, 91 S.Ct. at 2111, 29 L.Ed.2d at 755. An affirmative answer to each prong of the Lemon test is required to result in a statute's constitutional validity.
We find that each of these elements are met here. The fee is secular in that it is evenly applied and its purpose is to defray administrative costs. Here, there is no close supervision between the State and the Church and the Church's practices are *251 not affected by the State. Thus, the Act does not inhibit religion. The Church merely must register with the Department, pay a nominal fee and be inspected annually to insure that its structure is free from fire hazards. There is no inquiry into religious doctrine nor any delegation of state power to a religious body. Hence, no entanglement between church and state is shown here. The Act effects routine regulatory interaction between secular and religious bodies. This interaction previously has been upheld, Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989), reh'g den., Graham v. Commissioner of Internal Revenue, 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989), and we find no basis here for invalidation of the fee as it is applied to the Church.
The Church claims, however, that God is the sole authority for determining its conduct and any interference from the government would derogate the beliefs of its parishioners. An exemption granted to a religious organization is valid when the exemption is not aimed at sponsoring or favoring a religion or its institutions. Walz v. Tax Comm'r of City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). The Church contends that the denial of an exemption places an impermissible burden on religion, for the government may thereby condition the denial of this benefit upon conduct proscribed by religious faith. Thomas v. Review Bd. of Indiana Employment Sec. Div., et al., 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).
Although the Church relies on Walz and Thomas to support its argument of excessive entanglement and government interference, the two cases are clearly distinguishable from the present matter. Walz allowed an exemption for religious institutions to guard against the excessive entanglement created if property taxes were imposed. Walz v. Tax Comm'r, supra, 397 U.S. at 675, 90 S.Ct. at 1414-15, 25 L.Ed.2d at 705. The Court held that imposing property taxes on a religious institution *252 would involve a substantial and detailed administrative relationship, for enforcement purposes, between church and state and that this relationship would result in excessive entanglement. Walz v. Tax Comm'r, supra, 397 U.S. at 676, 90 S.Ct. at 1415, 25 L.Ed.2d at 705.
Further, the Court in Thomas held that the denial of a benefit based on petitioner's conduct, which was mandated by his religious beliefs, resulted in a violation of the First Amendment. Thomas v. Review Bd. of Indiana Employment Sec. Div., et al., supra, 450 U.S. at 716, 101 S.Ct. at 1431, 67 L.Ed.2d at 633. In Thomas, petitioner, a Jehovah's witness, was transferred to an armament department in the steel company for which he worked. His new duties included making turrets for military tanks. This conduct was proscribed by his religion. Petitioner asked to be laid off, and when this request was denied, he resigned. Petitioner requested unemployment benefits but was denied, since his was considered a voluntary termination.
The Court held that the denial of this benefit violated petitioner's First Amendment rights. The State improperly conditioned the receipt of unemployment benefits upon conduct which was prohibited by a religious faith. This denial of benefits resulted in placing substantial pressure upon petitioner there to modify his behavior and violate his beliefs. Id. at 717-18, 101 S.Ct. at 1431-32, 67 L.Ed.2d at 634-35.
The Church claims that the denial of an exemption will place the same pressure on its religion and its members. Yet, it fails to demonstrate any change of behavior or violation of its beliefs which have resulted from the imposition of the fee. The regulatory fee is applied to every building which requires fire inspection and is completely unrelated to the Church's conduct. Simply, cessation of any religious practice would not obviate the imposition of the fee or lessen its amount. The fee is behavior neutral. Hence, the argument is without merit.
*253 The Church further contends that the fee is not being generally applied and that the Department treats differently those buildings where religious activities occur. We disagree.
The Department has provided an exemption for properties used for religious purposes.[6] The school, the Church claims, is used by it solely for religious purposes. Therefore, it contends, if the Department has provided an exemption for religious activities it must apply them uniformly and grant the Church an exemption for the school.
The Department claims that the fee is generally applied to day care centers and schools (the sole uses of the Church's buildings), since they are classified as a life hazard use. N.J.A.C. 5:18-2.4A. Schools are clearly not granted an exemption. The State offers Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), reh'g den., 496 U.S. 913, 110 S.Ct. 2605, 110 L.Ed.2d 285 (1990), to support its position. Smith involved a member of the Native American Church, fired from his job for ingesting peyote during a religious ceremony. The respondent requested unemployment benefits but was denied them because his conduct was proscribed by the criminal statutes in his jurisdiction. Id. at 875, 110 S.Ct. at 1598, 108 L.Ed.2d at 883. The Court held that this denial of a benefit was permissible because the State was generally applying a religion-neutral criminal law that did not have the effect of burdening religion. Id. at 879, 110 S.Ct. at 1600, 108 L.Ed.2d at 886. "[I]f prohibiting the exercise of religion ... is not the object of the tax but merely the incidental effect of a generally applicable and otherwise valid [governmental] provision, the First Amendment has not been offended." Id. at 878, 110 S.Ct. at 1607, 108 L.Ed.2d at 885. The Court further held that an individual's religious beliefs would not excuse him from compliance with an otherwise *254 valid law. Id. at 880, 110 S.Ct. at 1600-01, 108 L.Ed.2d at 886.
The religious use exemption forgives the use of a building for religious meetings or ceremonies. Here, however, the Act involves regulations of general applicability. The Church is not excused from compliance with this law merely because of its religious beliefs. If it were granted the exemption and excused from paying the fee, the courts would then be required to evaluate the merits of different religious claims. The Court in Smith held that it is inappropriate for judges to determine the "centrality" of a belief to a particular religion. Id. at 887, 110 S.Ct. at 1604, 108 L.Ed.2d at 891. Therefore, the Church is denied the exemption.
In sum, the Act properly authorizes the Department to establish life hazard uses and the registration fees for these uses. The $115 fee bears a reasonable relation to the cost of administration and therefore is not a tax. The title of the Act comports with the notice requirements of the Constitution. Further, the fee is generally applicable and does not result in excessive entanglement between church and state. Therefore, the Act meets both state and federal constitutional requirements, and the Church is not exempt from paying the life hazard use registration fee. The ruling of the Department is affirmed.
Affirmed.
NOTES
[1] A "life hazard use" includes buildings classified in certain use groups, N.J.S.A. 52:27D-196(e), where the public congregates; such as bars, theaters, malls, large residential buildings, day care centers and schools. N.J.A.C. 5:18-2.4A-D.
[2] The owner of a building classified as a "life hazard use" is required to file an application for a certificate of registration, N.J.S.A. 52:27D-201(a); pay an annual registration fee, N.J.S.A. 52:27D-201(e); and be inspected at least once a year by the Department or local enforcing agency, N.J.S.A. 52:27D-205. The Department has established a registration fee schedule ranging from $70 to $3,250, depending upon classification which is utilized to recover the cost of administering the Act. N.J.A.C. 5:18-2.8(a); N.J.S.A. 52:27D-201(f).
[3] This classification describes public and private K-12 educational buildings with a maximum permitted occupancy greater than 50 persons. N.J.A.C. 5:18-2.4A(e)(4).
[4] Since the issue involved is a question of law, rather than a factual dispute, an evidentiary hearing in the Office of Administrative Law is not required. A challenge to the validity of the agency's registration fee is properly before this court. R. 2:2-3(a)(2).
[5] Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed2d 745 (1971).
[6] A category of life hazard uses is defined as "[r]ecreation centers, multipurpose rooms, lecture halls without fixed seating and similar uses where persons assemble other than for religious services...." N.J.A.C. 5:18-2.4B(c)(1).