## AT&T COMMUNICATIONS of the Southwest, Inc.
## *v.* CITY OF LITTLE ROCK

CA 93-86                             866 S.W.2d 414

Court of Appeals of Arkansas
En Banc
Opinion delivered November 17, 1993

*Wright, Lindsey & Jennings*, by: *N.M. Norton, Jr.* and *Ray F. Cox, Jr.*, for appellant.

*Thomas M. Carpenter, David A. Stewart, William C. Mann, III* and *Anthony W. Black*, for appellee City of Little Rock.

*Gilbert L. Glover* and *Paul J. Ward*, for appellee Public Service Commission.

JUDITH ROGERS, Judge. The question presented in this appeal is whether the Arkansas Public Service Commission correctly found that an ordinance of the City of Little Rock (the City) that required AT&T Communications of the Southwest, Inc. (AT&T) to pay a certain fee for the privilege of using the public streets was valid. For reversal, AT&T relies on three points: (1)(a) the City lacked the authority to enact the ordinance, specifically that Ark. Code Ann. § 14-200-101 (1987) does not provide such authority and that Ark. Code Ann. § 23-17-101 (1987) bars such action by the City, and (b) the levy of the ordinance is an unauthorized tax; (2) the ordinance is arbitrary, capricious, and discriminatory; and (3) the ordinance is unreasonable and therefore an unconstitutional burden on interstate commerce.

On July 5, 1989, the City adopted an ordinance that granted each provider of interstate and intrastate toll (long distance) telephone services in the City a franchise to use the City's public ways. The ordinance was enacted and the complaint was heard pursuant to Ark. Code Ann. § 14-200-101, which authorizes any city to enact by ordinance "terms and conditions upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality. . . ." The ordinance also levied a $.004 per minute charge on all long distance tele-

phone calls that are billed to a City service address. On July 25, 1989, AT&T challenged the ordinance by filing a complaint with the Arkansas Public Service Commission. The Commission designated an administrative law judge (A.L.J.) to hear the complaint. After a hearing on January 28 and 29, 1992, the A.L.J. issued Order No. 17 on October 5, 1992, finding the ordinance valid and dismissing AT&T's complaint. Subsequently, the order was adopted as an order of the Commission, and AT&T appeals from this order. Briefs in support of the Commission's dismissal of the complaint have been filed by the City and the Commission.

For its first point, AT&T contends that the City lacked the authority to enact the ordinance because telephone and telegraph companies have been granted the right to maintain their lines on public streets by the Arkansas General Assembly and that the levy imposed on AT&T by the ordinance is an unauthorized tax. AT&T relies on Ark. Code Ann. § 23-17-101(a), first enacted in 1885, which provides in part that:

> Any person or corporation organized by virtue of the laws of this state or of any other state of the United States or by virtue of the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence which is the equivalent of telephone or telegraph and which may be invented or discovered, may construct, operate, and maintain the telegraph, telephone, or other lines necessary for the speedy transmission of intelligence along and over the public highways and streets of the cities and towns of this state; across and under the waters and over any lands or public works belonging to this state[.]

In response, the City and the Commission contend the City has the authority to impose the levy in issue for AT&T's use of the public streets and its levy is not an unauthorized tax. For purposes of this appeal, however, we need not decide whether the City has the authority to exact compensation for the use of its streets because we agree with AT&T's contention that the fees assessed under the City's ordinance amount to a general revenue-raising scheme and therefore are taxes that have not been approved by the vote of the people as required by Ark. Code Ann. § 26-73-103 (1987).

At the hearing, Earl Paul, Deputy City Manager, testified about the development of the ordinance. He stated that the City recognized at the beginning of the 1988 budget cycle a need for additional sources of revenues for the City and began to search for sources of revenue that could be "tapped" by the City. He testified that because providers of local telephone service and other utilities were paying a franchise fee, the City considered the possibility of a franchise fee for long distance providers who use public rights-of-way in the provision of service. Mr. Paul stated that he met with long distance providers during 1988 in an effort to understand the technology involved in the service and to discuss the type of fee that "would not pose an onerous burden administratively on the company or the city." He further stated that the City knew its need for revenues and tried to design the ordinance to attain that amount of money. He testified that the City knew how much revenue it would try to generate by the levy and that city officials prepared estimates of the amount of revenue that would be generated by varying approaches to the structure of the levy. He also stated that the City worked with the providers to structure a fee that could be collected by the providers but passed on to its customers and finally arrived at a formula based on minutes of use. Mr. Paul testified that although the long distance providers wanted the fee based on percent of revenue, City officials believed it would be more equitable to base the fee on minutes of use. The City expected the revenue produced by the ordinance to be approximately $1,000,000.00 annually. Mr. Paul testified that the revenue would be spent for all municipal purposes without restriction; that the revenue would not be dedicated to any particular purpose, including any purpose associated with telephone service; and that the revenue would not be isolated or segregated from other general funds.

AT&T witnesses discussed AT&T's operations and its use of the City rights-of-way. Ed Moore explained that the 1983 divestiture, the separation of Southwestern Bell Telephone (SWB) and the other Bell operating companies from AT&T, required each company to conduct its business separately and independently from AT&T. Mr. Moore stated that divestiture caused no change in the occupation of city streets or public rights-of-way, although technological changes have caused each company to introduce new apparatus within its network. The record shows

that AT&T maintains facilities in the public rights-of-way, consisting of fiber optic cables that in the aggregate have a total length of twenty-three miles. In addition, AT&T obtains access to originating and terminating caller locations in the City over the facilities of SWB, a substantial portion of which occupy public rights-of-way in the City.

Charles Venus, an economist and expert witness for AT&T, testified that the charge levied by the City is in essence a tax. He stated:

> It makes a difference that the funds derived from the tax are used by the City for all sundry and general purposes [for which] the City spends public funds [.] That is what we call general revenue and it's normally produced by a tax and not a fee. Normally something allocated to general revenues is a tax and something allocated to special revenues or to special services is a fee. The occupation of streets and alleys and other rights-of-way is subject to direct assignment or direct allocation since it's a divisible service. This would suggest that a fee would be the appropriate charge as opposed to a tax.

The A.L.J. in his order limited his review of the levy's classification to an assessment of the minutes of use formula employed by the City and found that the formula was non-discriminatory and reasonable. The A.L.J. in his order and the Commission at oral argument have, perhaps understandably, displayed some reluctance to make a judicial interpretation of the levy's status as a tax or a fee.

■■ The supreme court has discussed the difference between a fee and a tax in several cases. In *City of Marion* v. *Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993), the court addressed certain sewer and water "tap and access fees" that the city charged developers of residential land in and around the city. The chancellor found that the ordinances were invalid because the fees assessed amounted to a general revenue raising scheme and were therefore "taxes" that had not been approved by a vote of the people as required by Arkansas Code Annotated § 26-73-103, which provides that a municipality's ordinance levying a tax is not valid until the tax is adopted by the voters of the city at a spe-

cial or general election. The supreme court discussed fees and taxes as follows:

> The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers. *City of North Little Rock* v. *Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983). An example of a fee charged in the exercise of a city's police power is found in *Holman* v. *City of Dierks*, 217 Ark. 677, 233 S.W.2d 392 (1950). There, the court held that an "annual sanitation charge" of $4.00 per business and residence which was to pay for fogging the city with insecticide three times a year was a fee, not a tax, for services to be rendered. On the other hand, the *Graham* court considered the validity of a North Little Rock ordinance which imposed a $3.00 per month "public safety fee" on the water bill of each household, business and apartment resident for the purpose of increasing the salaries of the city policemen and firemen and held such a fee was in actuality a tax because the so-called fee was for the cost of maintaining a traditional governmental function and services already in effect and not for a special service as was the case in the *Holman* case. 278 Ark. at 549, 647 S.W.2d at 453. As is illustrated by the *Graham* decision, this court in determining whether a governmental charge, assessment or fee is a tax is not bound by how the enactment or levy labels it. *See also City of Hot Springs* v. *Vapors*, 298 Ark. 444, 769 S.W.2d 1 (1989); cf. *Rainwater* v. *Haynes*, 244 Ark. 1191, 428 S.W.2d 254 (1968).

*City of Marion* v. *Baioni*, 312 Ark. at 425, 850 S.W.2d at 2. In finding the charge a fee, the court in *Baioni* went on to state:

> Of major importance, we point out that the city ordinances require the tapping and access fees to be segregated and placed into accounts to be used solely and exclusively to expand the capacity of the city's water and sewer systems. In other words, these funds will be used directly to benefit the new users and for no other purposes.

312 Ark. at 427-28, 850 S.W.2d at 3. The court also distinguished *Baioni* from "situations where municipalities have imposed fees to underwrite the costs of a special service to a new development but instead the monies benefitted the general public." *Id.*

In *City of North Little Rock* v. *Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983), the court addressed whether a public safety fee was a fee or a tax. The court noted that if it were a tax, it was void because it was never voted on by the voters. The court stated:

> Taxes are enforced burdens exacted pursuant to statutory authority. *Miles* v. *Gordon*, 234 Ark. 525, 353 S.W.2d 157 (1962). Municipal taxes are those imposed on persons or property within the corporate limits, to support the local government and pay its debts and liabilities, and they are usually its principal source of revenue. 16 E. McQuillin, *Municipal Corporations* § 44.02 (3rd ed. 1979).

> There is a distinction between a tax imposed for general revenue purposes and a fee charged in the exercise of police power. *Parking. Authority of Trenton* v. *Trenton*, 40 N.J. 251, 191 A.2d 289 (1963). An example of a fee charged in the exercise of police power is found in *Holman* v. *City of Dierks*, 217 Ark. 677, 233 S.W.2d 392 (1950). In *Holman* we held that an "annual sanitation charge" of $4.00 per business and residence which was to pay for fogging the city with an insecticide three times a year was a fee "for services to be rendered" and not a tax.

*City of North Little Rock* v. *Graham*, 278 Ark. at 548-49, 647 S.W.2d 453. Because the charge was to pay for a salary increase for policemen and firemen, the court found that the money was a contribution toward the cost of maintaining the traditional governmental functions of police and fire protection and concluded that it was a tax. *Id.*

In the case at bar, the City responds that the charge is not a tax but is imposed as an exercise of its police powers. The

City also maintains that the fee is the charge imposed for a special service, that of utilization of public streets and rights-of-way in excess of normal traffic purposes, and not the cost of maintaining a traditional governmental function or services already in effect. In support of its position, the City refers this court to *Mackay Telegraph & Cable Co.* v. *City of Texarkana*, 199 F. 347 (W.D. Ark. 1912). That case involved an ordinance requiring the utility to place certain wires underground. In its discussion, the court stated: "The city may impose, under its police power, reasonable requirements on the company as to the manner of construction and maintenance of its line." 199 F. at 349.

The City also cites *Alpert* v. *Boise Water Corporation*, 118 Idaho 136, 795 P.2d 298 (1990), in which a city's authority to grant gas and water utility franchises and impose franchise fees was challenged. The court found that the three percent charge on gross revenue was a valid consideration for the cities granting the franchises and agreeing not to compete with the utilities. In discussing the difference between a tax and a franchise fee, the court approved the following language: "In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." 795 P.2d at 307.

In another Idaho case, *City of Hayden* v. *Washington Water Power Co.*, 108 Idaho 467, 700 P.2d 89 (Ct. App. 1985), the city attempted to impose a franchise fee of five percent of gross revenue on a utility already possessing a franchise from the city. The court noted that a city has an inherent right to enact valid police power regulations, even if contracts are thereby affected, but the court found that the police power is limited to governmental acts promoting the health, comfort, safety, and general welfare of society, and that it does not embrace revenue measures. 700 P.2d at 91. The court stated: "We are not persuaded that the franchise fees at issue here represent exercises of the police power. Neither does the record contain a showing that the fees are incidental to a scheme of supervision, inspection or control in the discharge of the police power." 700 P.2d at 91.

In the case at bar, the City held no election, presumably in reliance on Ark. Code Ann. § 14-200-101[1], which provides in pertinent part:

> (a) Acting by ordinance or resolution of its council or commission, every city and town shall have jurisdiction to:
>
> (1) Determine the quality and character of each kind of product or service to be furnished or rendered by any public utility within the city or town and all other terms and conditions upon which the public utility may be permitted to occupy the streets, highways, or other public places within the municipality, and the ordinance or resolution shall be deemed prima facie reasonable[.]

This section was enacted in 1935 as a part of the act forming the Department of Public Utilities, No. 324, Acts of 1935, and this act is regulatory in nature. *See Southwestern Bell Tel. Co.* v. *Matlock*, 195 Ark. 159, 168, 111 S.W.2d 500, 505 (1938). Clearly, § 14-200-101 gives the City the right to impose valid police power regulations; however, it remains for this court to determine whether the levy imposed by the City is a lawful exercise of that police power.

The City has also referred this court to language from two supreme court cases that it argues is authority for the imposition of the levy. We have reviewed those cases and find they are not on point and do not support the City's contention that the imposition of the levy in the case at bar was a lawful exercise of its police power. In *Southwestern Bell Telephone Co.* v. *City of Fayetteville*, 271 Ark. 630, 609 S.W.2d 914 (1980), the supreme court addressed whether a governmental authority had to reimburse the utility for the cost of relocation of their telephone poles and gas meters because of a street improvement project. In *City of Fort Smith* v. *Arkansas Public Service Commission*, 278 Ark. 521, 648 S.W.2d 40 (1983), the court affirmed a Commission order that directed public utilities to eliminate municipal utility or fran-

---

[1] This code section was amended in 1993 to add "Except as provided in § 23-4-201" at the beginning and to insert "and rates for," after "each kind of." The section is now codified at § 14-200-101 (Supp. 1993).

chise taxes from their base rates. It is clear that in neither case was the validity of a franchise tax challenged.

■■ Here, the record clearly shows that the fee is a revenue-raising measure and the funds will be used as general revenue. The City admits that the fee was designed to collect a specific amount of money needed by the City for its operations. Pursuant to a Commission docket, the money will be collected by the long distance providers from those members of the public making or paying for interLATA or interstate calls and will be remitted to the City. We are not persuaded that the levy represents an exercise of the City's police power. Because a municipality's ordinance levying a tax is not valid until the tax is adopted by the voters of the city at a special or general election pursuant to § 26-73-103, we reverse. Our finding renders appellant's other arguments for reversal moot, and we need not address them.

Reversed.

MAYFIELD, J., concurs.

COOPER, J., not participating.