LYONS FARMS TAVERN, INC., PLAINTIFF-RESPONDENT, v. MUNICIPAL BOARD OF ALCOHOLIC BEVERAGE CONTROL OF THE CITY OF NEWARK, AND DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEFENDANTS-APPELLANTS.

Argued March 18, 1974—Decided July 10, 1975.

*Mr. David S. Piltzer,* Deputy Attorney General, argued the cause for defendant-appellant Division of Alcoholic Beverage Control (*Mr. George F. Kugler, Jr., and Mr. William F. Hyland,* Attorneys General, attorneys; *Mr. Piltzer* on the brief).

*Mr. John C. Pidgeon,* Assistant Corporation Counsel, argued the cause for the defendant-appellant City of Newark (*Mr. William H. Walls,* Corporation Counsel, attorney; *Mr. Salvatore Perillo,* Assistant Corporation Counsel, on the brief).

*Mr. Ladislas F. Feher* argued the cause for the plaintiff-respondent.

The opinion of the Court was delivered by

CLIFFORD, J. We granted certification to the Appellate Division on the petition of the Municipal Board of Alcoholic Beverage Control of the City of Newark (hereinafter "Board"), 64 *N. J.* 155 (1973), to consider the two issues presented therein: (a) whether community sentiment can be considered by an issuing authority on an application for person-to-person transfer of a plenary retail consumption license; and (b) whether in light of community sentiment

conditions may be placed on the license pursuant to *N. J. S. A.* 33:1–32. The Appellate Division held, in an unreported opinion, that "where a person-to-person transfer is involved, the only question to be decided is whether or not the proposed transferee qualifies as an original licensee" and that no conditions may be imposed on this transfer.

Plaintiff, Lyons Farms Tavern, Inc. (hereinafter "Lyons"), was, in 1972, operator of a bar on Clinton Place in Newark. It entered into a contract to purchase the Chancellor Delicatessen, and in connection therewith made application for a person-to-person transfer of the plenary retail consumption license issued to Chancellor Delicatessen & Restaurant, Inc. (hereinafter "Chancellor") for its premises at 378 Chancellor Avenue, Newark. In due course a public hearing was held before the Board, where a number of objectors appeared and were heard. They did not question or oppose the qualifications of Lyons Farms as a license holder; rather, they objected to what they perceived as Lyons' desire to expand the licensed premises from á delicatessen-restaurant to a primary bar operation. Respondent denied such plans, expressing its intention to continue the business as it was then being conducted. The Board denied the application for transfer.

This decision was appealed to the Director of the Division of Alcoholic Beverage Control (hereinafter "Division"), and a *de novo* hearing was held. One of the owners of Chancellor, the transferor, testified that he was selling because of his doctor's advice to "go out of business" on account of a heart condition. Although the premises contained a twenty-two foot bar, he described its current use as involving only approximately six feet, with five or six stools.[1]

---

[1]Chancellor's license permitted the use of the entire bar, as determined (without deciding whether prior permission for such use was required) by the Division on Chancellor's earlier application. *Chancellor Delicatessen v. Newark*, Bulletin 2000, Item 1 (1971). As we learned at oral argument, the full twenty-two feet was used only on

He had never committed a license violation. The stockholders of the purchaser-transferee, Lyons, were offered to prove their fitness. The major stockholder, Alex Neu, stated that the other bar which the company ran had been violation-free during the 10 years of its operation. He was questioned about the planned future operation of the Chancellor premises. In response, Mr. Neu indicated that he intended "to continue exactly as it has been operated * * * a package store with a small bar and selling sandwiches." It was to be operated "primarily as a delicatessen * * * (g) enreally in the same manner as it is conducted at present."

Again objectors appeared to oppose what they characterized as the expansionist tendencies of Lyons. They generally described the neighborhood's effort at self-improvement, made reference to the proximity of schools and churches, expressed opposition to the influx of liquor licenses driven into the south part of the City by urban renewal of the Central Ward, and gave voice to their apprehension that a Lyons takeover of Chancellor would "increase the output of alcohol consumption at this new place" (presumably on the assumption that the entire length of the bar would be used).

The Hearer's report focused specifically on this last stated apprehension and pointed out that the "total rejection of transfer by the Board surrounds only the anticipated extension or enlargement of the bar facilities." He recommended that the person-to-person transfer be approved subject to the condition that utilization of the bar not be expanded and that the premises continue to be operated as before. Written exceptions and answers to the report were filed, after which the Director issued his Conclusions and Order. He found that the worthiness of the applicant was not in issue, that the applicant had indicated his intention to operate the premises primarily as a delicatessen-restaurant, and permitted the transfer subject to two conditions: (1)

---

rare occasions, it generally being covered to give the appearance of a counter in connection with the package goods operation.

the premises had to be operated "as a bona fide delicatessen-restaurant as defined by *N. J. S. A.* 33:1–1 (t)" and (2) no other bar could be used except the present one, and that only to the extent of its current use, which he determined to be "approximately eight feet."

At this point Lyons apparently shifted its position. Not now being satisfied with license burdened with these conditions, it appealed to the Appellate Division. This resulted in a reversal of the Director's decision and an order that the transfer of the license be without special conditions. We reverse and reimpose those conditions.

Appellants argue first that community sentiment may be considered in a person-to-person license transfer and that the inquiry should not be restricted solely to the fitness of an applicant. This Court has found community sentiment to be a proper consideration in place-to-place transfers, *Borough of Fanwood v. Rocco,* 33 *N. J.* 404, 412–13 (1960), and has given it effect in license renewal applications, *Bd. of Comm'rs of Bayonne v. B & L Tavern, Inc.* 42 *N. J.* 131, 134 (1964); but we have not heretofore expressly approved its consideration in person-to-person transfers.

We note that the sale of alcoholic beverages has always been subject to extraordinary regulation. *E.g., Paul v. Gloucester County,* 50 *N. J. L.* 585, 595 (E. & A. 1888); *Boller Beverages, Inc. v. Davis,* 38 *N. J.* 138, 150 (1962). And although a person-to-person transfer quite logically suggests the narrowed examination of an applicant's fitness as a license holder, nevertheless it would be inimical to the legislative design to permit such a construction. See *Borough of Fanwood v. Rocco, supra,* 33 *N. J.* at 411–13. Community interest is best served by "an attentive and sympathetic attitude toward the sentiments of substantial numbers of persons in the locality." *Lyons Farms Tavern, Inc. v. Municipal Bd. of A. B. C., Newark,* 55 *N. J.* 292, 306–07 (1970). See *Borough of Fanwood v. Rocco, supra,* 33 *N. J.* at 415. Indeed, it makes little sense to hold a public hearing unless one is

prepared to give due consideration to expressions from the community. Therefore, we conclude that community sentiment may properly be heard and should be given thoughtful consideration in person-to-person license transfers.

*Neiden Bar & Grill, Inc. v. Municipal Bd. of A. B. C., Newark,* 40 *N. J. Super.* 24 (App. Div. 1956), and *N. J. S. A.* 33:1–26, both relied on by the Appellate Division, do not compel an opposite result. The statute covers the procedure for place-to-place and person-to-person transfers of license. It provides that once a transfer applicant has demonstrated qualification as an original licensee, the issuing authority *"may transfer* any license issued * * *"* (emphasis supplied). Implicit in the use of the emphasized expression is the intention to impose a measure of discretion in the issuing authority, presumably including discretion to deny a transfer even though the qualification requirements of *N. J. S. A.* 33:1–25 are met. In addition, a holding that compliance with the technical requirements of that qualification statute automatically entitled an applicant to have the license transferred would run counter to our basic notions of an effective licensing system, whose purpose it is to give the issuing authorities sufficient discretion to protect the public interest. See *Liptak v. Div. of A. B. C.,* 44 *N. J. Super.* 140, 143 (App. Div.), certif. den., 24 *N. J.* 222 (1957). In the face of the discretion which we find implicit in the "may transfer" language, *N. J. S. A.* 33:1–26 cannot be said to bar consideration of community sentiment in a person-to-person transfer.

Nor does *Neiden, supra,* stand for the proposition that only the transferee's qualifications under the statute may be considered. There the person-to-person transfer had been approved by both the local board and the Director. Opposition was expressed by other tavern owners who argued that the transferee was unfit because he had engaged in deceptive practices. These practices, however, had previously been reviewed and specifically proscribed by the Director, in com-

pliance with whose ban the applicant had refrained from those practices. The court affirmed approval of the license transfer, observing that the applicant met the qualifications of an original licensee and that his earlier activities did not mark him as unfit. As the Director observes in the case before us, "the apprehended conduct [in *Neiden*] was already proscribed by regulations and needed no reinforcement by a special condition applicable only to the license in question." The case does not support respondent's position but does demonstrate that conduct, as distinguished from the simple qualification requirements of *N. J. S. A.* 33 :1–25, is an appropriate area of inquiry.

█ If resort may be had to the feelings of the community with respect to a person-to-person transfer, we must next inquire whether the Director has the authority to give recognition to that community sentiment in the form of special conditions on the license rather than by simply denying the transfer.[2] The Director found his authority to impose conditions in this case specifically in *N. J. S. A.* 33 :1–32, reading as follows:

Subject to rules and regulations, each issuing authority by resolution, first approved by the commissioner, may impose any condition or conditions to the issuance of any license deemed necessary and proper to accomplish the objects of this chapter and secure compliance with the provisions hereof, and all such licenses shall become effective only upon compliance with the conditions so stated and shall be revocable for subsequent violation thereof.

█ The Appellate Division, in denying that any such power could be derived from this statute, apparently assumed that "issuance" as used in this statute applies only to the original granting of a license, not to transfers. But elsewhere the act uses "issuance" in a sense other than "original

---

[2]The propriety of the transfer itself is not before us, nor was it before the Appellate Division. The entire argument focuses on the imposition of special conditions on a person-to-person transfer.

grant." So, in *N. J. S. A.* 33:1–96, "renewals" are treated as a category of "issuance." Inasmuch as this is remedial legislation and should be liberally construed, *e.g., N. J. S. A.* 33:1–73; *Borough of Fanwood v. Rocco, supra,* we conclude that a transfer constitutes an "issuance" for purposes of *N. J. S. A.* 33:1–32. This interpretation is in keeping with the purposes of the act, among which are to limit the evils of alcohol consumption and to promote temperance and the public welfare.

■ This leads to the question of whether the Director, in imposing conditions on the license transfer, acted in a reasonable manner in honoring the local sentiment expressed both at the Board meeting and at the *de novo* hearing. Admittedly the community feeling towards the applicant was directed not at any lack of fitness, the principal condition of a person-to-person transfer, see *Neiden Bar & Grill, Inc. v. Municipal Bd. of A. B. C., Newark, supra,* but at the alleged predilection of Lyons to alter and enlarge the use of the premises at some future time to the detriment of the community.

If this were an appeal from an outright denial of transfer, we no doubt would look differently upon the substance of the objections since they are "mere assumptions" of how Lyons intends to conduct business on the Chancellor premises. See *Neiden Bar & Grill, supra,* 40 *N. J. Super.* at 29; but *cf. Lyons Farms Tavern, Inc., supra,* 55 *N. J.* at 302. But here the transfer was approved. The conditions which have been imposed, although not directed to an existing problem, *cf. Bd. of Comm'rs of Belmar v. Div. of A. B. C.,* 50 *N. J. Super.* 423, 425 (App. Div. 1958) (license subject to conditions at a previous "trouble spot"), do work to allay fears harbored by the community that the premises would change in character from a delicatessen-restaurant to a primary bar and in use from a small to a full bar. There was ample testimony on the record from which the Director could have determined that these fears were substantial and wide-

spread. The conditions are germane to the statutory scheme and are not arbitrary or capricious. Further, they embody no more restrictions than those which Lyons had repeatedly stated would conform to its intended mode of operation in any event; they make the applicant's express intentions binding. *Cf. Bd. of Comm'rs of Bayonne v. B. & L. Tavern, Inc., supra,* 42 *N. J.* at 134. Lyons is nowise foreclosed by this decision from petitioning, at the time of license renewal, to have the conditions removed from its license. The question then will become whether the public good is served by striking those conditions. See *Bd. of Comm'rs of Belmar v. Div. of A. B. C., supra,* wherein conditions were lifted from the license because the public need was no longer served by their continued imposition.

The judgment of the Appellate Division disallowing the imposition of special conditions on a person-to-person license transfer is reversed.

*For reversal* —Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—5.

*For affirmance*—None.