935 A.2d 763

OCEAN MEDICAL IMAGING ASSOCIATES D/B/A OCEAN MEDI-
CAL IMAGING CENTER, ATLANTIC OPEN MRI, L.L.C. D/B/A
ATLANTIC DIAGNOSTICS, EAST BERGEN IMAGING, L.L.C.,
PROGRESSIVE MEDICAL IMAGING OF UNION CITY, L.L.C.,
PROGRESSIVE MEDICAL IMAGING OF HACKENSACK, L.L.C.,
FOSTER & GROSS RADIOLOGIC ASSOCIATES, P.A. AND MID–
ATLANTIC STONE CENTER, APPELLANTS, v. NEW JERSEY
DEPARTMENT OF HEALTH AND SENIOR SERVICES, RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 11, 2007—Decided November 13, 2007.

Before Judges CUFF, LISA and LIHOTZ.

*Fredric L. Shenkman* argued the cause for appellants (*Cooper, Levenson, April, Niedelman & Wagenheim, P.A.,* attorneys; *Mr. Shenkman* and *Howard E. Drucks,* on the brief).

*Michael J. Kennedy,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Mr. Kennedy,* on the brief).

The opinion of the court was delivered by

LIHOTZ, J.T.C. (temporarily assigned).

Appellants own and operate ambulatory care facilities (ACF), not licensed to a hospital, that provide various healthcare services on their premises. Responding to the increased competition between hospitals and ACFs, the Legislature amended *N.J.S.A.* 26:2H–18.57 on June 29, 2004, to allow the Department of Health and Senior Services (DHSS) to impose an assessment on ACFs

that perform the services enumerated in the statute. The assessment calculation is bottomed on an ACF's gross receipts. *Ibid.* Revenues collected finance hospital charity care through the Healthcare Subsidy Fund, *N.J.S.A.* 26:2H–18.58.

DHSS proposed regulations to implement the statutory assessment. Appellants challenged the scope and nature of "gross receipts" as interpreted by DHSS to calculate the amount of the assessment. Specifically, appellants sought to exclude from an ACF's annual gross receipts "pass through" payments made to independent contractors and revenue generated from services other than those listed in the statute. Appellants' objections were rejected, after due notice and comment, and the regulations became effective on August 7, 2006. Pursuant to *Rule* 2:2–3(a)(2), appellants seek review of the validity of the agency's rule-making action.

Additionally, appellants filed a motion to supplement the record on appeal. *R.* 2:5–5. Appellants propose to add the certification of Doug Dunn, who denies the availability of alternative business models to avoid receipt of "pass through" revenues due to professional independent contractors, and asserts that these global payments are mandated by third-party payors.

We determine appellants had an opportunity to present for consideration the facts now offered. We deny the motion. Additionally, we conclude the agency's rulemaking falls within the bounds of its statutory authority. We affirm.

In 1971, the Legislature adopted the Health Care Facilities Planning Act (HCFPA), *N.J.S.A.* 26:2H–1 to –26, in response to a growing concern over the rising costs of hospital care. The "HCFPA is essentially cost-containment legislation focusing on the institutional delivery of health care services." *St. Peter's Univ. Hosp. v. Lacy,* 185 *N.J.* 1, 5, 878 *A.*2d 829 (2005).

Because ACFs are not required to provide care regardless of a patient's ability to pay, the proposed new rules served to "even the

playing field between ambulatory care facilities and hospitals that provide the same services." 37 *N.J.R.* 2279(a) (July 5, 2005).

The statutory amendment states:

Effective July 1, 2004, the department shall assess each ambulatory care facility that is licensed to provide one or more of the following ambulatory care services: ambulatory surgery, computerized axial tomography, comprehensive outpatient rehabilitation, extracorporeal shock wave lithotripsy, magnetic resonance imaging, megavoltage radiation oncology, positron emission tomography, orthotripsy and sleep disorder services. The Commissioner of Health and Senior Services may, by regulation, add additional categories of ambulatory care services that shall be subject to the assessment if such services are added to the list of services provided in *N.J.A.C.* 8:43A-2.2(b) after the effective date of *P.L.* 2004, c. 54.

The assessment established in this subsection shall not apply to an ambulatory care facility that is licensed to a hospital in this State as an off-site ambulatory care service facility.

(1) For Fiscal Year 2005, the assessment on an ambulatory care facility providing one or more of the services listed in this subsection shall be based on gross receipts for the 2003 tax year as follows:

(a) a facility with less than $300,000 in gross receipts shall not pay an assessment; and

(b) a facility with at least $300,000 in gross receipts shall pay an assessment equal to 3.5% of its gross receipts or $200,000, whichever amount is less.

The commissioner shall provide notice no later than August 15, 2004 to all facilities that are subject to the assessment that the first payment of the assessment is due October 1, 2004 and that proof of gross receipts for the facility's tax year ending in calendar year 2003 shall be provided by the facility to the commissioner no later than September 15, 2004. If a facility fails to provide proof of gross receipts by September 15, 2004, the facility shall be assessed the maximum rate of $200,000 for Fiscal Year 2005.

[*N.J.S.A.* 26:2H-18.57(b).]

DHSS issued notices to ACFs, including appellants, that their first assessment payment was due October 1, 2004. Appellants filed a Declaratory Judgment action in the Chancery Division, which was transferred to this court. In an unpublished opinion, we dismissed the appeal because DHSS had neither adopted proposed regulations nor issued a final action that was subject to review. *Ocean Med. Imaging Assocs. v. N.J. Dep't of Health and Senior Servs.*, No. A–5292–04, 2006 WL 1995292 (App.Div. Jul. 19, 2006).

During the rule-making process, appellants and others submitted comments on the proposed new rules, which had been published at 37 *N.J.R.* 2279(a) (July 5, 2005). Specifically, when calculating the assessment, appellants sought to exempt from an ACF's gross receipts pass-through payments forwarded to independent contractors and sums received for services not enumerated in the statute. DHSS rejected these contentions. The regulations implementing the ACF assessment legislation were adopted, effective August 7, 2006. *N.J.A.C.* 8:31A–1.1 to –4.2.

As permitted by *Rule* 2:2–3(a)(2), appellants seek review of the validity of the rules promulgated by DHSS, raising these challenges:

1. "PASS–THROUGH PAYMENTS" SHOULD NOT BE INCLUDED IN THE GROSS RECEIPTS UPON WHICH THE STATUTE AND REGULATION IMPOSE ASSESSMENTS.

2. [D]HSS IS NOT ENTITLED TO IMPOSE AN ASSESSMENT UPON REVENUES GENERATED BY SERVICES NOT IDENTIFIED IN THE STATUTE.

3. THE ASSESSMENTS FOR A PARTICULAR YEAR CANNOT CONSTITUTIONALLY BE PREDICATED UPON GROSS RECEIPTS GENERATED IN EARLIER YEARS.

Administrative regulations enjoy a presumption of legality. *N.J. Ass'n of Health Care Facilities v. Finley,* 83 *N.J.* 67, 80, 415 A.2d 1147 (1980). In our review,

"[w]e start with the premise that we must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible. Such deference is appropriate because it recognizes that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are particularly well equipped to read ... and to evaluate the factual and technical issues that ... rulemaking would invite....

Despite that deference, a rule will be set aside if it is inconsistent with the statute it purports to interpret. That is, the agency may not under the guise of interpretation ... give the statute any greater effect than its language allows."

[*St. Peter's Univ. Hosp., supra,* 185 *N.J.* at 13, 878 A.2d 829 (quoting *In re Freshwater Wetlands Protection Act Rules,* 180 *N.J.* 478, 488–89, 852 A.2d 1083 (2004)) (internal citations and quotations omitted).]

Although sometimes stated as a determination for arbitrary or unreasonable agency action, our role is restricted to four inquiries:

(1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[*George Harms Constr. Co. v. N.J. Tpk. Auth.*, 137 *N.J.* 8, 27, 644 A.2d 76 (1994).]

In this matter, the statute specifies that the amount of an ACF's annual assessment is a percentage of the prior calendar year's "gross receipts." An ACF with gross receipts less than $300,000 is exempt from payment, and those above that threshold pay three and one-half percent of the gross receipts, not to exceed $200,000. *N.J.A.C.* 8:31A–2.1.

"Gross receipts" means the payments received by a covered facility for all health care services rendered in the facility. Gross receipts are net of returns and contractual allowances and other items that correct for payments that will not be received. However, gross receipts are not net of the costs of providing services, payments of taxes, or other costs.

[*N.J.A.C.* 8:31A–1.2]

■ Appellants argue that "pass-through" payments, which are monies received from insurers then paid to independent contractor professionals, should be excluded from an ACF's gross receipts when calculating the assessment. Appellants state an ACF is merely a "conduit" for these sums and it "derives no profit, no beneficial use of, no accounting or tax consequences from, or any monetary benefit whatsoever as a result of the 'pass-through' process." The objection posed is that the inclusion of these payments, which do not flow into an ACF's income stream, is "unfair, irrational and a violation of due process." We disagree.

The legislative purpose in imposing the assessment was to broaden the availability of charity care contributors and to equitably assess hospitals and non-hospital facilities that perform the same type of surgery and patient care. The Legislature purposely chose to use gross receipts to calculate an ACF's assessment, rather than some other calculation, such as adjusted gross income or net income. Calculating a percentage of gross receipts affords an easily identifiable computation not subject to arbitrary or subjective modification.

Appellants' argument on this issue was specifically considered by DHSS during the comment period. DHSS responded:

*N.J.S.A.* 26:2H–18.57 and *N.J.A.C.* 8:31A define the basis of [fixing] the assessment as gross receipts, which captures the revenues from all health care services rendered in the licensed facility and make[s] no exclusion for pass-through payments or the portion of global billing revenue that applies to physician professional services.

Patients choose ACFs for ambulatory care services in one of two ways.... [T]he patient selects ... a physician who would interpret the test or perform the surgery. In the alternative method, the patient chooses the location of the ACF regardless of the physician who interprets results or performs surgery.... Each of these two methods economically benefits either the physician or the ACF respectively....

*N.J.S.A.* 26:2H–1 through –26 and *N.J.A.C.* 8:43A do not preclude covered ACFs from billing only facility services, nor do they preclude contracted physicians from billing professional services separately from ACFs.... [DHSS] does not preclude global billing, either. By taking no action in response to this comment, the Department removes itself from regulating or favoring business models. As a result, the decision remains with the covered ACFs and contracted physicians to determine the relative costs and savings of billing globally and using pass-through payments to physicians as compared with physicians billing professional components separately from the covered ACFs billing their services.

[38 *N.J.R.* 3167 (Aug. 7, 2006).]

We are obliged to construe and apply the statute as enacted, and we are persuaded that the Legislature had no intention of allowing dilution of an ACF's gross receipts by payments to third-party professionals. The agency's determination comports with the expressed legislative policies and complies with the legislative mandate.

■ Appellants also argue that the agency has exceeded its statutory authority because an ACF's gross receipts must be limited to revenue derived from services identified in the statute. The statute allows DHSS to "add additional categories of ambulatory care services that shall be subject to the assessment if such services are added to the list of services provided in *N.J.A.C.* 8:43A–2.2(b)." Appellants maintain that this language differentiates the income derived from the specified services as opposed to other income received from services not enumerated in the statute when computing the amount of an ACF's assessment. We reject this interpretation.

When interpreting a statute, the Legislature's intent is the paramount goal and generally, the best indicator of that intent is the statutory language. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). The statute identifies those ACFs subject to assessment based upon services performed. However, the cited language referencing *N.J.A.C.* 8:43A–2.2(b), which concerns licensure of ACFs, essentially addresses those services presently permitted to be performed at ACFs. The provision allows the DHSS to expand the services offered at ACFs and consequently, enlarge those ACFs subject to the assessment.

When computing the amount of the assessment, however, the statute does not base the calculation on the type of services performed; it uses gross receipts. "Gross receipts" is neither qualified nor limited. The precise language of the statute states that the "assessment on an [ACF] providing one or more of the services listed ... shall be based on gross receipts" manifests the Legislators' intent, and we need not search further for guidance. *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004). Thus, we will not introduce an additional qualification, which the Legislature pointedly omitted in its drafting. *DiProspero, supra,* 183 *N.J.* at 495, 874 *A.*2d 1039.

The real thrust of appellants' contentions reflects an objection to the use of an ACF's gross receipts to compute its assessment. That is a matter for legislative and not judicial resolution. *Foosaner v. Dir., Div. of Taxation,* 58 *N.J.* 57, 62, 275 *A.*2d 129 (1971).

Finally, appellants challenge the constitutionality of the provision found in the statute and regulation that uses a prior year's gross receipts to compute the future year's assessment. Likening the statute's calculation methodology to a retroactively imposed tax, appellants argue the legislation is "irrational, arbitrary, capricious or discriminatory."

The fee assessed to an ACF is not a tax but a permissible measure imposed pursuant to the government's police power to

regulate. *Holmdel Builders Ass'n v. Twp. of Holmdel,* 121 *N.J.* 550, 582–83, 583 *A.*2d 277 (1990); *New Life Gospel Church v. State, Dep't of Community Affairs, Div. of Hous. Bureau of Fire Safety,* 257 *N.J.Super.* 241, 246, 608 *A.*2d 397 (App.Div.), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1136 (1992). DHSS's regulations reasonably reflect the legislative goal of subsidizing charity care. *Holmdel Builders, supra,* 121 *N.J.* at 572, 583 *A.*2d 277. We determine the retroactive aspect of calculating the assessment presents no constitutional infirmity.

Affirmed.