**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5685-17T3

IRON BAR, LLC,

      Petitioner-Respondent,

v.

TOWN OF MORRISTOWN,

      Respondent-Appellant.

_____

           Argued June 4, 2019 – Decided July 19, 2019

           Before Judges Messano, Fasciale and Gooden Brown.

           On appeal from the New Jersey Division of Alcoholic Beverage Control, Agency Docket No. 50.

           Denis Francis Driscoll argued the cause for appellant (Inglesino Webster Wyciskala & Taylor LLC, attorneys; Denis Francis Driscoll, Elnardo Julian Webster, and Owen T. Weaver, of counsel and on the briefs).

           Ryder T. Ulon argued the cause for respondent (Schenck Price Smith & King, LLP, attorneys; Ryder T. Ulon and Thomas Joseph Cotton, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Alcoholic Beverage Control (Sheena M. Rinkle, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

"[T]he sale of alcoholic beverages has always been subject to extraordinary regulation." Lyons Farms Tavern v. Mun. Bd. of Alcoholic Beverage Control of Newark, 68 N.J. 44, 49 (1975). Under the statutory scheme that regulates the licensing of establishments dispensing alcoholic beverages, "[a] municipality has 'the original power to pass on an application for a . . . license or the transfer thereof,' but that power is 'broadly subject to appeal to the Director.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10-11 (2009) (quoting Blanck v. Mayor & Borough Council of Magnolia, 38 N.J. 484, 492 (1962)). "[T]he Director's review is de novo as to all necessary factual and legal determinations." Id. at 11 (citing Borough of Fanwood v. Rocco, 33 N.J. 404, 414 (1960)).

N.J.S.A. 33:1-32 provides:

> Subject to rules and regulations, each issuing authority by resolution, first approved by the commissioner, may impose any condition or conditions to the issuance of any license deemed necessary and proper to accomplish the objects of this chapter and secure compliance with the provisions hereof, and all such licenses shall become effective only upon

2

> compliance with the conditions so stated and shall be revocable for subsequent violation thereof.
> [(Emphasis added).]

As used in the statute, the term "issuance" applies to not only the original grant of a license but also to its transfer and renewal. Lyons Farms Tavern, 68 N.J. at 51-52. The municipality need not obtain the Director's approval before passing the resolution placing special conditions on a license, but the statute "requir[es] the Director's approval before any regulations adopted by a municipality become effective." Gober v. Twp. Comm. of Pemberton, 185 N.J. Super. 323, 333 (Law Div. 1982).

Iron Bar, LLC (Iron Bar) has operated a bar-restaurant at 5 South Street in Morristown — The Iron Bar — since 2012, and another bar-restaurant — Revolution — at adjacent premises, 7-9 South Street, since 2016. The Iron Bar borders a redevelopment area that has seen significant residential development in recent years. There are six other licensees on the same South Street block, with a total approved capacity exceeding 2000. The municipal ordinance permits alcoholic beverage licensees to sell liquor until 2 a.m.; needless to say, the exodus from these bars and restaurants creates unique problems.

The Town of Morristown (the Town) approved Iron Bar's application for a "place-to-place transfer" of a license, first, in 2012, when Iron Bar proposed

operating a Mexican restaurant at 9 South Street. The Town conditioned the approval on the prohibition of alcohol sales after 11 p.m. Iron Bar never opened the restaurant.

In 2014, Iron Bar again sought approval of a license transfer, proposing this time a "jazz themed restaurant," called "Iron Bistro," in storefronts at 7 and 9 South Street (the expansion area). Despite opposition from some members of the public, the Town approved the request. It imposed a similar condition on the license, i.e., no sales of alcohol in the expansion area after 11 p.m., Sunday through Thursday, and after 11:30 p.m. on Friday and Saturday.

Iron Bar appealed the limit on sale hours to the Division of Alcoholic Beverage Control (ABC). It did so again when the Town approved its renewal application for the 2015-16 license term with the same conditions. Although the ABC Director stayed the special condition pending each appeal, the Office of Administrative Law (OAL) did not hear either appeal before the respective license terms expired.

In June 2016, when Iron Bar applied to renew its license, the Town again imposed the same limits for alcohol sales in the expansion area. Iron Bar appealed to the ABC, and the matter was transferred to the OAL as a contested

4

case. The parties submitted a joint stipulation of facts, and, after two days of additional testimony, the administrative law judge (ALJ) closed the record.

When the ALJ was appointed as a judge of the Tax Court, however, a second ALJ was assigned to the case. After both sides agreed to close the record without further submissions, he rendered an initial decision. The ALJ "found no nexus between the perceived problems of noise or misbehavior and the operation of Revolution[,]" and "there was insufficient evidence of substantially widespread community opposition to the transfer (expansion) sought in this matter." Because the Town "failed to demonstrate . . . the operation of Revolution has caused or is linked to any real conditions that threaten the health, safety, welfare, and morals of the community," the ALJ concluded that the Town could not "meet the 'necessary and proper' standard . . . in N.J.S.A. 33-1-32." The ALJ determined "the imposition of the time restriction, including the inexplicable selection of the closing times, demonstrates that it is arbitrary and capricious."

The Director adopted the ALJ's initial decision in his final agency decision. He noted that license-issuing authorities usually impose special conditions "where there is a pattern of violations of either ABC statutes, regulations or ordinances, or of the zoning or fire code[,]" but here, "based on

5 A-5685-17T3

the stipulation of facts . . . there were no violations of any State or municipal ordinances by [Iron Bar]." Recognizing special conditions may be justified by "a pattern of similar special conditions on other licenses that address a similar problem[,]" the Director found here, the Town's clerk "expressly stated that no other licensee has a special condition that limits hours." Additionally, there was no "widespread public sentiment that the licensee [was] causing a problem that need[ed] to be addressed[,]" because although "at most, [fourteen] people expressed concern[] . . . the Chief of Police, a Council woman and . . . other residents . . . found no problem and did not know the reason for the condition."

Finally, the Director noted that Iron Bar agreed to limit its occupancy for the entire premises, and the Town conceded The Iron Bar rarely exceeded the limit. Therefore, the Director found that "even if the limited[-]hours restriction[s] were in place, the patrons of Revolution would simply move to [The] Iron Bar . . . and all would leave at 2[] a.m., adding no additional people onto the street." The Director concluded "the special condition limiting Revolution's hours [was] arbitrary and unreasonable." The Director's order declared the special condition limiting the hours "void," and he vacated the stay and special conditions limiting occupancy to 1043 persons. This appeal followed.

A-5685-17T3

The Town argues the Director's decision was arbitrary, capricious and unreasonable because it "divested the Town Council of its principal jurisdiction and primary authority" over licensees, and there was sufficient credible evidence in the record supporting imposition of the special condition that limited sales. The Town also argues Iron Bar "materially misrepresented the nature of the expanded premises." The Town contends the Director's decision to stay and ultimately void the special condition on Iron Bar's license "violated the Administrative Procedure Act" (APA), N.J.S.A. 52:14B-1 to -24. Lastly, the Town contends evidentiary rulings, and OAL's failure to render an initial decision within forty-five days of closing the record, see N.J.S.A. 52:14B-10(c), denied the Town a fair hearing and violated its due process rights.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

Our review of the Director's decision "is limited in scope." Circus Liquors, 199 N.J. at 9 (citing In re Herrmann, 192 N.J. 19, 27 (2007); In re Carter, 191 N.J. 474, 482 (2007)).

> [W]hile the local issuing authority is vested with discretion in the exercise of any statutory jurisdiction committed to it, nevertheless when the Division determines on appeal that that discretion has been exercised improperly or mistakenly and the court is reviewing the Division's determination, the inquiry

becomes one as to whether it can be said that the Director's action was a manifestly mistaken exercise of his own sound discretion.

[Bd. of Comm'rs of Belmar v. Div. of Alcoholic Beverage Control, 50 N.J. Super. 423, 426 (App. Div. 1958) (citing Hickey v. Div. of Alcoholic Beverage Control, 31 N.J. Super. 114 (App. Div. 1954); Rajah Liquors v. Div. of Alcoholic Beverage Control, 33 N.J. Super. 598 (App. Div. 1955)).]

"Without a 'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record, an administrative agency's final quasi-judicial decision should be sustained, regardless of whether a reviewing court would have reached a different conclusion in the first instance." Circus Liquors, 199 N.J. at 9-10 (quoting Herrmann, 192 N.J. at 27-28). In making this determination, we review:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Id. at 10 (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

While we generally defer to an "agency's interpretation of a statute" it is charged with enforcing, Thompson v. Board of Trustees, Teachers' Pension &

Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018), we accord "substantial deference" to the Director's decision. Circus Liquors, 199 N.J. at 10.

> In enforcing the State's alcohol regulations, the "Director has powers of supervision and control which set him apart from any other formal appellate tribunal." Because of the "sui generis nature and significance" of the State's liquor regulations, "it is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other administrative agencies, cannot be indiscriminately applied."
>
> [Ibid. (quoting Blanck, 38 N.J. at 490-91).]

"Still, we are not 'bound by an agency's interpretation of a statute or its determination of a strictly legal issue, particularly when that interpretation is inaccurate or contrary to legislative objectives.'" S.L.W. v. N.J. Div. of Pensions & Benefits, ___ N.J. ___, ___ (2019) (slip op. at 10) (quoting Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418-19 (2018)).

The Town argues that the Director divested the municipality of its primary power to regulate licenses, and first the ALJ and then the Director failed to consider credible evidence demonstrating public sentiment against the concentration of bars in the area and public support for the special condition. Certainly, public sentiment is a valid consideration for the Director when it relates to "dangers to the public health, safety, morals and general welfare

9

commonly recognized as incidents of the sale and consumption of alcohol." Lyons Farms Tavern, Inc. v. Mun. Bd. of Alcoholic Beverage Control of Newark, 55 N.J. 292, 307 (1970). In Lyons Farms Tavern, the public sentiment against renewal was considered "substantial" when "neighbors, local residents, three neighborhood and civic associations with sizable memberships, two Rabbis serving local and community interests, and by representatives of the nearby Beth Israel Hospital[,]" objected. Id. at 297.

Before the ALJ, however, while several residents and a councilmember testified about the problems caused by the crowds, i.e., public urination and vomiting near the premises, it was undisputed that Iron Bar had not violated any ABC regulations, municipal ordinances, or fire codes. The municipal clerk testified that the Town had not imposed a special condition on any other licensee. The Chief of Police testified that the large crowds on the sidewalks and streets near the premises were mostly attributable to The Iron Bar and not Revolution; he could not explain why the special condition was initially imposed or why the Town chose the specific times for the special condition to go into effect. Another councilmember testified that she did not support the special condition, and that she voted in favor of it only to assure approval of the application. In short, there was more than sufficient credible evidence in the

10

record for the Director to conclude there was not widespread public sentiment in favor of the special condition and that Iron Bar had no history of violations, i.e., there was no nexus between the special condition and the alleged problems.

In Belmar, the Director voided special conditions the municipality repeatedly placed on a hotel's license, severely restricting the location within the establishment where liquor could be sold. 50 N.J. Super. at 425. The Director found there had been "no trouble" at the licensed premises during the prior two years, and it was "unfair" that none of the other eight hotels in town was subjected to "these obviously crippling conditions." Id. at 426. In affirming the Director's decision, we said, "This is the kind of decision which was intended by the Legislature to be committed to his expert judgment and it should not be overruled by the court in these circumstances." Ibid. The same is true in this case.

We also reject the Town's assertion that Iron Bar "materially misrepresented" the nature of its intended business as it approved both prior applications because Iron Bar said it intended to operate restaurants in the expansion area. First, at oral argument before us, the Town acknowledged there was a hearing before the municipal council on Iron Bar's 2016-17 renewal. We were not provided with a transcript of that hearing, but, we have no reason to

assume the Town was denied the opportunity to fully investigate Iron Bar's intention at the time of the hearing, or that it actually misrepresented its intention. Secondly, it is disingenuous to assert that Iron Bar assented to the special condition when it twice exercised its right to appeal the special condition, but because of delays unexplained by this record, the issue was never decided on the merits in the OAL.

The Town also argues that the Director failed to adopt regulations regarding the issuance of licenses with special conditions, and the lack of regulations violates the APA.[1] See Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 329 (1984) ("An agency determination that is intended to be applied as a general standard and with widespread coverage and continuing effect can . . . be considered an administrative rule . . . ."). If "the . . . agency determination constitute[s] a rule, . . . its adoption require[s] compliance with [the] statutory rule-making procedures" of the APA. Id. at 334.

However, "an agency decision in a contested case is not an administrative rule." G. & J.K. Enters., Inc. v. Div. of Alcoholic Beverage Control, 205 N.J. Super. 77, 85 (App. Div. 1985); see also N.J.S.A. 52:14B-2 (the definition of

---

[1] The Town's challenge to the Director's issuance of a stay pending final decision is moot. Redd v. Bowman, 223 N.J. 87, 104 (2015).

"'[a]dministrative rule' or 'rule' . . . does not include . . . agency decisions and findings in contested cases").  "An administrative agency need not adopt rules and standards precisely detailing every broad grant of conferred authority."  G. & J.K. Enters., 205 N.J. Super. at 85 (citing Mitchell v. Cavicchia, 29 N.J. Super. 11, 14 (App. Div. 1953)).  We reject the Town's argument, without prejudice to its ability to file an appropriate rulemaking petition under the express provisions of the APA.  See N.J.S.A. 52:14B-4(f).

Finally, we reject the Town's arguments that the OAL's delay in issuing an initial decision and evidentiary rulings made by the ALJ during the hearing denied it a fair hearing and due process.  The arguments require scant comment in a written opinion.  R. 2:11-3(e)(1)(E).

The ALJ conducted a voir dire of the Town's proposed expert, a municipal planner.  She rejected admission of his expert report because he admitted having no knowledge of ABC law or procedures.  Nevertheless, she permitted him to testify as an expert in planning and to identify video footage of the area showing the crowds.

Iron Bar proffered the testimony of a former director of the Division.  With the Town's consent, the judge permitted him to testify about ABC procedures,

and he opined about the scope and extent of municipal power under N.J.S.A. 33:1-32.

In an administrative proceeding, the judge may admit expert testimony if it "will assist . . . to understand the evidence or determine a fact in issue." N.J.A.C. 1:1-15.9(b). "A judge sitting on a bench trial is in the best position to determine if expert testimony on a particular issue will assist that judge." N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 439 (App. Div. 2002) (citing Wilkerson v. Pearson, 210 N.J. Super. 333 (Ch. Div. 1985)). We see no mistaken exercise of the judge's discretion in limiting the testimony of the planner. The Town's essential argument, which was supported by the proffered expert witness, about the effect of numerous licensed premises in close proximity to a rapidly developing residential area was not lost on the ALJ or the Director.

While an expert may not address matters of law which are the responsibility of the court to decide, see, e.g., Troxclair ex rel. Troxclair v. Aventis Pasteur, Inc., 374 N.J. Super. 374, 384-85 (App. Div. 2005) (noting court has no obligation to accept expert's statutory interpretation), permitting the former ABC Director to testify was harmless error. R. 2:10-2. Neither the ALJ's initial decision nor the Director's final decision even cited the testimony.

Lastly, any delay between closing the record and rendering the initial decision was harmless, particularly since the second ALJ offered the Town an opportunity to supplement the record when he assumed control of the case, and the Town declined.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION